UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGAN GUEVARA,

    Plaintiff,                              Case No. 2:16-cv-14306

v.                                       HONORABLE STEPHEN J. MURPHY, III

SUMMIT MORTGAGE, et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS [22, 25] AND REMANDING THE CASE**

    Plaintiff Regan Guevara claims she cannot get a straight answer on her debt. Faced with foreclosure, she brought the instant suit in the wake of her correspondence with entities involved in the ownership, servicing, and collection of the debt. Now before the Court are two motions for judgment, collectively filed by five of the seven defendants: Trott Law, Bosco Credit II Trust Series, Deutsche Bank National Trust Company, Franklin Credit Management Corporation, and Mortgage Electronic Registration Systems, Inc. ECF 22, 25.

    To begin, Guevara is mainly asserting state-law claims. The amended complaint has eight counts: (1) Quiet Title, (2) Common Law Slander of Title, (3) Statutory Slander of Title, (4) Innocent/Negligent Misrepresentation, (5) Fraud, (6) Violation of the Fair Debt Collection Practices Act (FDCPA), (7) Violation of the Michigan Debt Collection Practices Act (MDCPA), and (8) Violation of the Real Estate Settlement Procedures Act (RESPA). The first five counts are against all the defendants, while the FDCPA and

MDCPA counts are exclusively against Defendants Trott and Franklin Credit, and the RESPA count is solely against Franklin Credit.

In light of the limited federal nature of Guevara's suit, the Court will first evaluate whether the federal claims should be dismissed, and then determine whether the remaining action is more suitable for state-court adjudication.

**STANDARDS OF REVIEW**

Defendants simultaneously move for summary judgment under Rule 56 and judgment on the pleadings under Rule 12(c). *See* ECF 22, PgID 697; ECF 25, PgID 1106. Although the portions of their motions addressing the FDCPA and RESPA counts do not specifically mention what rule Defendants rely upon, the relief they seek is "dismissal," so the Court will construe these motions under Rule 12.

The Court reviews a Rule 12(c) motion as it would a Rule 12(b)(6) motion, and focuses on a plaintiff's allegations. It may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[.]" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). A court may also consider exhibits not included in the complaint but attached to the motion, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If the exhibits are not referenced in the complaint, the court may still consider them, but must treat the motion as one for summary judgment under Rule 56 and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Defendants relied upon three relevant exhibits that were not attached to the Complaint. One (ECF 22-13) is a truth-in-lending document describing the terms of the debt-consolidation agreement referred to by Guevara in her affidavit and over which the debt-collection dispute arises. *See* ECF 23-2, PgID 1004, ¶ 9. The other two exhibits, however, are letters allegedly sent by Franklin Credit (ECF 22-27, 22-28). They are not referred to in the Complaint—although letters sent before and after them were. *See* ECF 23-2, PgID 1051–52 (Guevara's QWR letter), 1053–54 (Franklin Credit's final response to the QWR letter); ECF 23-2. Trott's motion does not rely upon the letters, but the other defendants' joint motion does. The Court may therefore consider the Trott motion under the Rule 12(c) standard, but must convert the other into a motion for summary judgment under Rule 56.

I. <u>The Rule 12(c) Standard</u>

When reviewing a motion under 12(c), the Court accepts as true all well-pleaded material allegations of the pleadings and draws reasonable factual inferences in favor of the non-moving party, but "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)), "raise a right to relief above the speculative level, and [] state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). It is not enough to just offer "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

II. <u>The Rule 56 Standard</u>

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the nonmoving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

**BACKGROUND**

I. <u>The Origins of the Debts</u>

Guevara purchased 404 Laurie Dr. in Flushing, Michigan (the Property) for $145,000 on November 5, 2004. ECF 23-2, PgID 988. The following June, she entered into an agreement to pay off her credit card debt and, in so doing, granted Summit Mortgage a security interest in the Property. ECF 22-13. Guevara, however, is hazy on the transaction. In her affidavit, she confirmed that she "spoke with a company about a possible debt consolidation loan," that she took out a debt-consolidation loan to pay off her credit cards, and that she began making payments on the new loan in July 2005. ECF 23-2, PgID 1003–04. But she claims that "the only document [she] recall[s] signing" and having notarized was two pages in length and "was represented as just a notice and not anything binding." *Id.* at 1004. In any event, Guevara started making the new monthly payments on the debt in July 2005 and continued to make payments into 2012. ECF 23-2, PgID 1004, ¶ 9; ECF 23-2, PgID 1020–35.

II. The Debt Collections

Guevara's federal claims arise from correspondence about the 2005 debt that took place several years later, during 2016–17. The trouble began when Guevara received two letters, each dated April 21, 2016 and each informing her that she was in default on her mortgage. One letter was sent by Franklin[1] and demanded she pay $21,183.23 by May 26, 2016 to cure her default and keep Franklin Credit from initiating a foreclosure. ECF 23-2, PgID 1043. The other letter was sent by Trott Law ("Trott"), which purported to represent Franklin Credit. Although the letter did not demand payment, it listed her "total indebtedness" as $54,470.48. *Id.* at 1040. The Trott letter

---

[1] The letter stated that it was being provided by Franklin Credit, "the Servicer of the above-reference loan, on behalf of Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1, the Creditor to whom the debt is owed[.]" ECF 23-2, PgID 1043.

5

explained that unless Guevara notified Trott that she disputed the validity of the debt within 30 days of receiving the letter, Trott would assume the debt was valid. *Id.* The Franklin Credit letter did not give a timeline for disputing the debt, but did list a number to call if Guevara "wishe[ed] to dispute the delinquency" or "the calculation of amount of the delinquency and reinstatement amount[.]" *Id.* at 1046. The Trott letter stated at the top, "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT" and the Franklin Credit letter likewise stated that "FRANKLIN CREDIT MANAGEMENT CORPORATION IS A DEBT COLLECTOR[.]" *Id.* at 1040, 1046.

Guevara and her husband apparently sent a timely response to the Trott letter that included a summary of payments she made from December 2005 to May 2012. *See* ECF 23-2, PgID 1003 (affidavit of Guevara attesting that she sent a "debt validation demand letter"), 1017 (letter from Trott recognizing the receipt of a letter dated April 30, 2016), 1034–35 (the summary of payments). Trott, again on behalf of Franklin Credit, responded to Guevara's letter on May 20, 2016 and explained that Franklin Credit "hereby verifies that your debt is valid." *Id.* at 1017. The letter declared that a payment history "in support of [the debt's] validity" was enclosed. *Id.*

Later that year, Franklin Credit sent a letter dated on November 4, 2016 (a Friday) that advised Guevara that it "agrees to release its deed of trust/lien on the above listed account for the minimum amount of $15,000.00." *Id.* at 1064. The letter explained that the offer was only valid until Tuesday and that Guevara had to acknowledge her agreement "to the terms outlined in th[e] letter by signing" in the space provided. *Id.*

Guevara also sent a letter to Franklin Credit, dated November 8, 2016, in which she stated, "Please allow this letter to serve as formal written request for a Qualified

6

Written Statement pursuant to RESPA (Real Estate Settlement Procedures Act)[.]" *Id.* at 1053. She explained that she disputed the amount she allegedly owed on the account as well as "the servicing and false information" she had been given and consequently was "unclear as to who[m] this debt is owed to[.]" *Id.* She then requested several specific documents relating to her loans and credit reporting. *Id.* at 1053–54.

Franklin Credit confirmed that it receive Guevara's written request in a letter dated November 21, ECF 22-27, and sent another letter dated December 14, 2016 in which it requested an additional time to respond, ECF 22-28. Franklin finally sent its full response to Guevara's November letter on January 6, 2017. The letter included many of the documents requested by Guevara and also informed her that as of November 30, 2005 (when Franklin began servicing the loan), "the loan was current and had an unpaid principal of $36,920.20." ECF 23-2, PgID 1051. The letter also informed Guevara that a request "was sent to the credit reporting agencies on December 14, 2016, requesting an update of your client's credit information and to reflect the current account status." *Id.*

## DISCUSSION

I. The FDCPA Count

The FDCPA is meant to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e) and prohibits specific actions in effectuating that purpose. The Amended Complaint does not identify a specific provision of the FDCPA, but alleges Defendants violated it (1) by failing to properly respond to her requests and (2) by making false and misleading statements to Guevara about "the amount needed to be paid off the alleged debt" and "the source of information in the 'debt validation response letter[.]'" ECF 23, PgID 977, ¶¶ 75–76. Franklin Credit and Trott deny that the

7

actions alleged by Guevara violate the Act, and Franklin Credit further contends that the Act does not even apply to it because is not a "debt collector."

A. Failure to Respond

The provision of the FDCPA that relates most closely to Guevara's failure-to-respond claim is 15 U.S.C. § 1692g(b), the same section addressed in the case cited in Guevara's response. *See* ECF 30, PgID 1318 (citing *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014)). Section 1692g is titled "Validation of debts" and it requires a debt collector to send the consumer specific written notice about the debt "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt[.]" 15 U.S.C. § 1692g(a). The consumer then has thirty days to notify the debt collector, in writing, that the debt or any portion of it is disputed or "that the consumer requests the name and address of the original creditor[.]" 15 U.S.C. § 1692g(b). The debt collector must then

> cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Id.*

The Sixth Circuit has addressed what constitutes adequate "verification" under the Act and explained that "an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing [the] objective" of verification. *Haddad*, 758 F.3d at 785. The verification should therefore facilitate the consumer's ability to "uncover an error in the record of the debt leading to

8

the cancellation of the debt, or reveal the underlying dispute between the parties that can then be resolved." *Id.*

Guevara contends that Trott failed to "validate" the debt because it merely sent her a "regurgitated" summary of payments that her husband had typed up, including the typos.[2] ECF 30, PgID 1302, 1311, 1313, 1316. But her husband's summary was two pages listing only the payment date, the amount paid (broken down into interest and principal), and the remaining balance due. In contrast, Trott sent a 14-page payment history from Franklin Credit that included many more transactions (including principal adjustments, numerous late payments, and associated fees) and more detail about each transaction. *See* ECF 25-9, PgID 1187–1200. That type of accounting satisfies the validation requirement of § 1692g(b).

Guevara also contends that she wants "proof that Franklin Mortgage Credit is acting [] with authority on behalf of Deutsche, and proof that Deutsche is the legal owner of the debt." ECF 30, PgID 1302. That proof is not required by the FDCPA. Upon a consumer's request, the debt collector has an obligation to validate the debt (as described above) and to provide "the name and address of the original creditor." 15 U.S.C. § 1692g(b). Trott's May 20, 2016 response letter identified the original creditor: "Summit Mortgage, a division of Shenandoah Valley National Bank, 555 Herndon Parkway, Suite 200, Herndon, Virginia 20170." ECF 23-2, PgID 1017. Neither Trott nor Franklin Credit was required to provide anything more.

---

[2] The "typos" are apparently only the omission of payments from July to November 2005. But both summaries begin in December 2005, so they simply both begin at the same point—a similarity that, standing alone, is not indicative of mere "regurgitation" or a failure to validate.

9

B. False and Misleading Statements

Guevara also alleges that Trott and Franklin Credit made "false and misleading statements as to the amount needed to be paid off of the alleged debt" and also altered signature lines. ECF 23, PgID 963, 977, ¶¶ 23–24, 76. Again, though not specifically alleged, Guevara seems to be relying upon 15 U.S.C. § 1692e, the portion of the FDCPA that prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." The section provides a non-exhaustive list of violative conduct that includes falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Trott and Franklin Credit concede that the numbers on their respective April 21, 2016 letters are not identical. But they insist this is because the numbers are describing different things. The Franklin letter, ECF 22-20,[3] "is the breach letter setting forth the amount necessary to cure the default," while the Trott letter, ECF 22-7,[4] "is the [Fair Debt Letter] setting forth the amount necessary to *payoff* [] the loan, i.e., the total amount of debt." ECF 22, PgID 718; *see also* ECF 25, PgID 1121 (making the same argument). The explanation is a sensible one and Guevara made no reply to the argument in either of her response briefs. The Court will therefore deem any argument waived. *Murray v. Geithner*, 763 F. Supp. 2d 860, 871–72 (E.D. Mich. 2011), *aff'd on other grounds sub nom.*, *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744 (6th Cir. 2012) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to

---

[3] Attached to the Amended Complaint at ECF 23-2, PgID1043.
[4] Attached to the Amended Complaint at ECF 23-2, PgID 1040.

the motion is waived, and grant the motion.") (citing *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)).

That conclusion leaves the matter of the allegedly doctored signature lines to be addressed. To begin, it is not entirely clear whether the accusation of forgery is being alleged in relation to the FDCPA count.[5] Paragraph 24 mentions the signature lines and the paragraph is perfunctorily incorporated into the FDCPA count (¶ 71), but the gravamen of the count seems to focus on the competing financial figures and Defendants' validation efforts. *See* ECF 23, PgID 977, ¶¶ 75–76. Nevertheless, the claim fails.

Guevara included the document with the allegedly forged initials. Page one of the document states at the very top, in large letters, "MORTGAGE" and further states that "THIS MORTGAGE is made on this 13th day of March, 2005, between the Mortgagor, REGAN A. GUEVARA . . . and the Mortgagee, Summit Mortgage, a division of Shenandoah Valley National Bank[.]" ECF 23-2, PgID 992. It states that "TO SECURE to Lender the repayment of indebtedness evidenced by the Note . . . Borrower does hereby mortgage, grant and convey to Lender . . . 404 LAURIE DRIVE, Flushing, MI[.]" *Id.* at 992–94. The page's footer states "MICHIGAN — Second Mortgage — 1/80 — FNMA/FHLMC UNIFORM INSTRUMENT" along with "MERS Modified Form 3823" and just below it "Page 1 of 6[.]" *Id.* at 992. Every other page bears the same footer, including the final one ("Page 6 of 6"), which Guevara confirms bears her true, notarized signature, dated June 13, 2005.

---

[5] Or that it is being "alleged" at all. While the Amended Complaint definitively asserts that Trott and Franklin Credit "provided [] false and inconsistent figures," ¶ 23, it states only in couched terms that "[a] review of the 'mortgage' *indicates* that it *appears* to have been altered," ¶ 24. ECF 23, PgID 963 (emphasis added).

11

Franklin Credit did not begin servicing the debt until November 2005. Even if the initials on the bottoms of the other pages of the mortgage were forged, Guevara does not assert that her signature is false, nor does she assert that Trott or Franklin Credit knew they were forged—much less forged them themselves—when they commenced the communications now at issue. On the record before the Court, Guevera has only plausibly pled that Trott and Franklin Credit attempted to collect a debt, pursuant to an ostensibly valid document, for which Guevara had been making payments for several years.

Again, the FDCPA states that, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Guevara has not pled that Trott or Franklin Credit violated the Act. Her FDCPA claims must therefore be dismissed.

II. <u>The RESPA Count</u>

Guevara's other federal-law count arises under the Real Estate Procedures Act (RESPA). The Act imposes certain duties upon loan servicers to respond to "qualified written requests" (QWRs) from borrowers. QWRs must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower" and include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Once the servicer has received the QWR, it has five days (excluding legal public holidays, Saturdays, and Sundays) to "provide a written response acknowledging receipt of the correspondence[.]" 12 U.S.C. § 2605(e)(1)(A). The servicer then has 30 days (also from the time of receiving the

QWR and excluding holidays and weekends) to make necessary corrections, conduct applicable investigations, and send the borrower a written explanation of clarification. 12 U.S.C. § 2605(e)(2). The 30 days can be extended by up to 15 more days "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." 12 U.S.C. § 2605(e)(4).

Guevara sent a QWR to Franklin Credit on November 8, 2016. ECF 23-2, PgID 1053–54; ECF 22-27, PgID 914. Franklin sent a letter dated November 21, 2016 in which it acknowledged that it received the QWR on November 14, 2016. That satisfied the five-day requirement. ECF 22-27. Thirty non-excluded days from November 14 would have been December 28, 2016, but before that date, Franklin sent another letter dated December 14, 2016 in which it requested an additional 15 days to respond because it was "still in the process of investigating [Guevara's] request", which satisfied the requirement for an extension.[6] ECF 22-28. Franklin Credit finally responded to the QWR in a letter dated January 6, 2017, and that satisfied the extended deadline. ECF 22-29.

RESPA requires the servicer's response to contain the following information, if applicable:

1. a written notification of any corrections to the borrower's account, including the name and telephone number of a representative of the servicer who can provide assistance to the borrower;

2. a written explanation or clarification that includes a statement of the reasons for which the servicer believes the account of the borrower is

---

[6] Although the reasons for the extension were not more fully explained at that time, the subsequent letter contended that the breadth of documents Guevara requested were "well beyond the scope of that which is defined by the Real Estate Settlement Procedures Act or otherwise unduly burdensome." ECF 22-29, PgID 918. Nevertheless, Franklin Credit provided them.

correct as determined by the servicer and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

3. a written explanation or clarification that includes information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

See 12 U.S.C. § 2605(e)(2).

Franklin Credit's January response letter included the following documents:

- Note
- Assignment of Note
- Allonge
- Mortgage
- Assignments of Mortgage
- Notification of Assignment, Sale or Transfer of [Guevara's] Mortgage Loan
- Settlement Agreement (November 4, 2016)
- Summit Mortgage[] Payment History
- Franklin Credit Management Corporation Loan History Summary

ECF 22-29, PgID 918. The body of the letter also stated when Franklin Credit began servicing the loan, the amount of the unpaid principal at that time, when the last electronic transmission was sent to the credit reporting agencies, the control number for that transmission, as well as a mailing address, fax number, and phone number at which Franklin Credit could be reached. *Id.* at 918–19. Yet Guevara's Amended Complaint alleges that Franklin Credit "failed to provide any information[.]" ECF 23, PgID 981, ¶ 88.

Again, the Court will apply the summary-judgment standard to the motion because two of the Franklin letters were neither included in the Amended Complaint nor explicitly referred to in it. The letters, however, are integral to Guevara's RESPA claim, and although Franklin Credit included them in its motion and relies heavily upon them,

14

Guevara made no argument about their authenticity or response to Franklin Credit's argument about them generally. The Court is left to conclude that Guevara has no evidence to the contrary. Consequently, the Court finds that there is no genuine dispute as to any material fact concerning Guevara's RESPA count. Franklin Credit's letters were timely and Guevara has neither alleged nor shown any specific information that Franklin Credit was required to deliver but failed to provide in its responses. The Court will therefore grant Franklin Credit's motion for summary judgment as to the RESPA count.

III. <u>Remand</u>

Federal courts are courts of limited jurisdiction. When the court's jurisdiction is premised on a federal question, the court may exercise supplemental jurisdiction over state-law claims. But a court may decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Court has dismissed all the claims over which it has original jurisdiction and finds that the remaining claims would be most suitably resolved by a Michigan court. The Court will therefore decline to exercise jurisdiction over the remaining claims and remand the case.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motions [22. 25] are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Regan Guevara's FDCPA and RESPA claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the case is **REMANDED** to Genesee County Circuit Court.

**SO ORDERED**.

s/Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: February 28, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 28, 2018, by electronic and/or ordinary mail.

s/David P. Parker  
Case Manager